HIRAM P. WALKER, APPELLANT, V. ANDREW J. STEWART ET AL., APPELLEES.

FILED JANUARY 16, 1913.   No. 16,905.

The syllabus in *Walker v. Smith*, *ante*, p. 841, applied to this case.

APPEAL from the district court for Clay county: LESLIE G. HURD, JUDGE. *Affirmed.*

*Ambrose C. Epperson,* for appellant.

*Wilmer B. Comstock, R. D. Sutherland, D. T. Barrett* and *M. L. Corey, contra.*

FAWCETT, J.

The pleadings and the evidence in this case are substantially the same as in *Walker v. Smith, ante,* p. 841. The judgment of the court below was the same in this case as in that, and a similar judgment must be entered in this court. The difference between the two cases only will be considered in this opinion.

In this case, as in *Walker v. Smith, supra,* the mortgage was executed to J. O. Walker. It was signed by William R. and Ella S. Thurber and was to secure a note in the sum of $4,500. It was dated September 21, 1892. The petition alleges that before maturity of said note, "and on or soon after its date," Walker for a valuable consideration sold and assigned the same to plaintiff. It further alleges that after executing the mortgage the Thurbers conveyed the land to defendant Andrew J. Stewart, who is now the owner of the equity of redemption to all of the real estate described in the mortgage, except the west half of the northwest quarter of section 34, which he subsequently sold and conveyed to defendant Franson. In other respects the petition is in the usual form. The Columbia Fire Insurance Company was made a defendant, and filed an answer setting out a mortgage which, for the purpose of this case, need not be considered. The answer of defendants Stewart sets out the transaction by which they obtained their deed from the Thurbers, in which it is shown that they received their deed in exchange for other lands which they conveyed to the Thurbers. In that exchange each was to convey his land to the other clear of incumbrances. It then alleges that, in order to carry out the exchange, it became necessary for the defendants Stewart to secure a loan of $7,000

from the Columbia Fire Insurance Company, and the sum of $5,000 from some other source; that they secured an abstract of title to the lands of the Thurbers, including the lands described in the mortgage in suit, in which J. O. Walker appeared as the mortgagee, and sent it with his application to the Columbia Fire Insurance Company; that, after the company had passed on the title and accepted the same, papers were made out and defendants informed that the title was good and would be accepted; that defendants then signed notes to the Columbia Fire Insurance Company, one of which was for the sum of $4,800, dated June 30, 1905, and covering the Clay county land; that, to secure the balance of money necessary to complete the deal, they borrowed $5,000 in two sums of $2,500 each, secured by a real estate mortgage to J. O. Walker, one of the mortgages being on the Clay county land; that at the same time Thurber, in order to carry out his part of the exchange, borrowed the sum of $2,500 from the Columbia Fire Insurance Company, securing the same by a mortgage on other lands, and also borrowed $3,000 from J. O. Walker and gave a mortgage on the same premises, and secured the money thereon in the full amounts of said mortgages, and with the proceeds thereof paid to J. O. Walker, "the mortgagee of the note and mortgage sued upon herein, the principal and interest due therein in full; and the said J. O. Walker then and there accepted the amounts due thereon in full payment thereof," and on July 8, 1905, in due form released the northwest quarter of section 34, described in the mortgage, and acknowledged payment of the debt therein described; that the release was duly recorded; that on July 20, 1905, Walker in due form released the other 80 acres described in the mortgage, and that the release was duly recorded; that in those releases payment of the mortgage debt is acknowledged. It is further alleged that Thurber paid the interest on the note sued upon from the time of its date, which was in September, 1892, to the time of the release of the mortgages by J. O.

Walker, in July, 1905; that all of such payments were made to J. O. Walker, the mortgagee, and to no other person; that the mortgage was past due about eight years at the time of its payment and release, as above set out; that neither of the Thurbers nor the answering defendants had any interest, either in law or in equity, in and to the note and mortgage sued upon. The answer then sets out the agency of J. O. Walker for plaintiff, substantially as set out in *Walker v. Hale, ante,* p. 829. The reply to the answer of defendants Stewart is a general denial.

The evidence shows that plaintiff never at any time, until after the death of J. O. Walker in December, 1908, had possession of either the mortgage or the assignment, but that during all of the years from the time he alleges that he obtained the assignment on or soon after the date of the note, viz., September 21, 1892, until December, 1908, the mortgage and assignment remained in the possession and custody of J. O. Walker. The evidence also shows that plaintiff claims that each five years after the execution of the note it was extended for another period of five years, and by the extension of 1897 the rate of interest was reduced from 6½ to 5 per cent., but upon cross-examination plaintiff admits that no written extension was ever executed and that they were not made with the defendants. When asked with whom the extension was made, he answered: "The extension was made by J. O. Walker, but there was no writing of that kind; just a communication whether I would extend the time. Q. This application for an extension was made by J. O. Walker? A. Yes, sir. Q. Your reply in writing was to J. O. Walker? A. Yes, sir. Q. Did you ever have any agreement with William R. Thurber or Ella S. Thurber direct with regard to the change of the rate of interest? A. No, sir. Q. There was a payment of $500, I believe? A. Yes, sir; 24th September, 1894. Q. You received the $500 from J. O. Walker, did you? A. I think I did." The evidence, without conflict, shows that the assignment was

never recorded, and that none of the defendants ever had any knowledge or notice of plaintiff's interest in the note and mortgage until plaintiff asserted his claim after J. O. Walker's death. That J. O. Walker had authority to accept payment from the Thurbers of the principal is shown by the fact that about two years. after plaintiff became the owner of the note, and nearly three years before its maturity, J. O. accepted a payment of $500 of principal, for which he accounted to plaintiff, who made no objection to the action taken by J. O. either to him or to the Thurbers.

The facts above outlined, together with the general agency of J. O. Walker, as shown by the evidence, make it too clear to require discussion or citation of authorities that the payment of the debt to J. O. Walker was a payment to plaintiff. But it is argued by plaintiff that the evidence offered and admitted to show the payment of the debt to J. O. Walker was incompetent because prohibited by section 329 of the code. That is to say, that the testimony of the Stewarts and the Thurbers, in relation to the payment to J. O. Walker, is incompetent for the reason that, as J. O. Walker was the mortgagee, plaintiff as his assignee is his legal representative, and, J. O. Walker being dead, the testimony of these persons who are directly interested is incompetent. It is unnecessary to discuss this argument for the reason that plaintiff in chief testified in relation to the transactions in a manner that brought these witnesses within the exceptions noted in section 329, and for the further reason that no evidence was offered by the plaintiff to controvert the recitals contained in the releases executed and delivered by J. O. Walker that the debt had been paid to him in full.

We are unable to see where anything could be gained by a further discussion of this case. The judgment of the district court was clearly right, and it is

AFFIRMED.